UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY EDWARD COLE,

         Plaintiff,         Civil Action No. 14-14454
                                  Honorable Gershwin A. Drain
                                  Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

         Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 12]**

Plaintiff Troy Edward Cole ("Cole") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [10, 12], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Cole is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Cole's Motion for Summary Judgment [10] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

1

**II.     REPORT**

    **A.     Procedural History**

On September 9, 2011, Cole filed an application for DIB, alleging a disability onset date of February 2, 2009.[1] (Tr. 180-86). This application was denied initially on March 9, 2012. (Tr. 118-22). Cole filed a timely request for an administrative hearing, which was held on April 18, 2013, before ALJ Lawrence E. Blatnik. (Tr. 30-80). Cole, who was represented by attorney Mark Farrell, testified at the hearing, as did vocational expert Joanne Pfeffer. (*Id.*). On July 26, 2013, the ALJ issued a written decision finding that Cole is not disabled under the Act. (Tr. 13-24). On October 9, 2014, the Appeals Council denied review. (Tr. 1-5). Cole timely filed for judicial review of the final decision on December 12, 2014. (Doc. #1).

    **B.     Framework for Disability Determinations**

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or

---

[1] Cole previously filed an application for DIB covering this same time period. (Tr. 87). On July 6, 2011, another ALJ denied this application (Tr. 87-98), and Cole did not appeal that decision (Tr. 13). ALJ Blatnik, who adjudicated the claim at issue herein, determined that the issue of Cole's disability up until July 6, 2011 was barred by res judicata and focused on whether Cole was disabled beginning on July 7, 2011 (the day after the prior ALJ's decision). (Tr. 13-14). This Court will do so as well.

2

> mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C. Background

#### 1. Cole's Reports and Testimony

At the time of the administrative hearing, Cole was 47 years old, and at 6' tall, weighed 205 pounds. (Tr. 40). He was single and lived alone. (Tr. 40-41, 232). He completed high school and a seven-year welding apprenticeship. (Tr. 41-42, 211). Previously, he worked as a welder for more than twenty years before he had carpal tunnel release surgery on his right hand in February 2009. (Tr. 42-43, 211). Cole testified that, following that surgery, he was unable to return to work as a welder because he could not grasp a torch. (Tr. 43). Subsequently, he was diagnosed with colon cancer, had thirteen inches of his colon surgically removed in 2009, and then had additional surgeries in 2010 to repair hernias resulting from that colectomy. (Tr. 44).

At the time of the hearing, Cole indicated that his frequent bowel movements were "the big thing" that prevented him from working. (Tr. 44-45). He testified that, on average, he needs to use the bathroom a dozen times a day (some days only five or six times, some days seventeen to twenty times). (Tr. 45). Cole also indicated that he continues to have problems with his right (dominant) hand, saying that it "just keeps getting worse and worse" and he "can't hardly use it at all." (Tr. 46). He also had been diagnosed with carpal tunnel in his left hand and said he "can't do a whole lot" with that hand either. (Tr. 66). Additionally, he has heart disease, which he believes limits his ability to perform physical work, and diabetes, for which he takes insulin. (Tr. 47, 50). He further indicated that he wears an "abdomen binder," saying that he still has a hernia which requires additional surgery to repair. (Tr. 49).

Cole testified that he is able to drive short distances. (Tr. 41, 235). He is able to attend to his own personal care needs, prepare his own meals, go grocery shopping, perform some household chores, and do some yard work. (Tr. 54-56, 234-35). He testified he cannot walk even one block, can stand for only two or three minutes at a time, can sit for only "a little while," cannot lift even a gallon of milk with his right hand, and "can't grasp anything" with his right hand. (Tr. 51-52). He uses marijuana four or five times a week for pain control, in addition to taking Vicodin on a daily basis. (Tr. 52-53).

    2. *Medical Evidence*

The Court has thoroughly reviewed Cole's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

    *3.*  *Vocational Expert's Testimony*

Joanne Pfeffer testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 69-79). The VE characterized Cole's past relevant work as a welder as skilled in nature and heavy in exertion. (Tr. 70). The ALJ then asked the VE to imagine a claimant of Cole's age, education, and work experience who can perform light work, with the following additional limitations: can lift or carry up to twenty pounds occasionally and ten pounds frequently; can sit at least six hours and stand or walk at least six hours in an eight-hour work day; can never climb ladders, scaffolds, or ropes; can only occasionally crouch, kneel, crawl, climb ramps or stairs, push or pull with the right upper extremity, and handle or finger with the right hand; can frequently balance and stoop; can never use air, pneumatic, power, torque, or vibratory tools; and requires ready access to the restroom facilities. (Tr. 70-71). The VE testified that the hypothetical individual would not be capable of performing Cole's past relevant work. (*Id.*). However, the VE testified that the hypothetical individual would be capable of working in the light, unskilled jobs of counter clerk (6,000 jobs in the lower peninsula of Michigan), rental clerk (8,000 jobs), and usher (609 jobs). (Tr. 72).

  **D.**  **The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that Cole is not disabled under the Act. At Step One, the ALJ found that Cole has not engaged in substantial gainful activity since February 2, 2009 (his alleged onset date). (Tr. 16). At Step Two, the ALJ found that Cole has the severe impairments of carpal tunnel syndrome, status-post right carpal tunnel surgical repair, irritable bowel syndrome, status-post colectomy, coronary artery disease, diabetes, history of hernia (status-post surgical repair), hypertension, and migraine headaches. (Tr. 16-17). At

Step Three, the ALJ found that Cole's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 17-18).

The ALJ then assessed Cole's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: can lift or carry up to twenty pounds occasionally and ten pounds frequently; can sit at least six hours and stand or walk at least six hours in an eight-hour work day; can never climb ladders, scaffolds, or ropes; can only occasionally crouch, kneel, crawl, climb ramps or stairs, push or pull with the right upper extremity, and handle or finger with the right hand; can frequently balance and stoop; can never use air, pneumatic, power, torque, or vibratory tools; and requires ready access to the restroom facilities. (Tr. 18-22).

At Step Four, the ALJ determined that Cole is unable to perform his past relevant work. (Tr. 22). At Step Five, the ALJ concluded, based in part on the VE's testimony, that he is capable of performing a significant number of jobs that exist in the national economy. (Tr. 23). As a result, the ALJ concluded that Cole is not disabled under the Act. (*Id.*).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the

merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence

7

supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.   Analysis**

In his motion, Cole argues that the ALJ erred in: (1) discounting the opinion of his treating physician, Dr. Van Wagnen; (2) assessing his RFC; (3) failing to consider the combined effects of his impairments; and (4) evaluating his credibility. Each of these arguments is addressed below.

*1.   The ALJ Reasonably Discounted the Opinion of Cole's Treating Physician*

In April 2013, Cole's primary care physician, Aaron Van Wagnen, M.D. completed a form entitled "Physician Residual Functional Capacity Questionnaire," in which he opined that Cole's symptoms would interfere constantly with his attention and concentration; that he was incapable of even "low stress" jobs; that he could not walk a single city block without rest or severe pain; that he could sit or stand for only fifteen minutes at a time, and for less than two hours total in an eight-hour workday; that he needed to get up and walk around for five minutes every fifteen minutes; that he needed to be able to shift positions at will; that he needed to take an indeterminate number of unscheduled breaks throughout the day; that he could occasionally lift less than ten pounds; that he could occasionally look up or down, turn his head, or hold it in a static position; that he could rarely twist, stoop, crouch, or climb; that he had significant (but unspecified) limitations in reaching, handling, and fingering with both hands; and that he would likely miss more than four days of work per month. (Tr. 443-46). The ALJ evaluated this opinion but gave it "very limited weight." (Tr. 22). Cole now argues that the ALJ erred in this respect. (Doc. #10 at 15-18).

Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and

8

laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakely*, 581 F.3d at 406 (internal quotations omitted). While treating source opinions are entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence."). If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)).

In this case, the ALJ's analysis was entirely consistent with these principles. Indeed, contrary to Cole's assertion that the ALJ "disregarded [his] treating doctor out of hand" (Doc. #10 at 18), the ALJ considered Dr. Van Wagnen's opinion in detail and then provided specific reasons for discounting it – namely, that it was inconsistent with the overall medical evidence of record, appeared to overstate Cole's limitations, and was not well-supported by Dr. Van Wagnen's own treatment notes. (Tr. 21-22). Each of these reasons finds support in the record and is discussed more thoroughly below.

As an initial matter, the ALJ correctly found that Dr. Van Wagnen's opinion as to Cole's extreme limitations was inconsistent with his own treatment notes. (Tr. 22). For example,

9

although Dr. Van Wagnen's treatment notes indicate that Cole complained of frequent bowel movements (15-17 per day) at one visit in February 2010 (Tr. 440), numerous subsequent visits over the next few months reflect no complaints of this nature (Tr. 428-39). When Cole visited Dr. Van Wagnen in December 2010, he complained of leg pain, left inguinal pain, diarrhea, anxiety, and left hand pain. (Tr. 425). Dr. Van Wagnen noted that Cole was due for a colonoscopy, but he declined to schedule this procedure or further abdominal testing for financial reasons. (Tr. 427). Cole did not see Dr. Van Wagnen again until October 2011, when he reported some abdominal pain (improved since his last visit) and no bowel issues. (Tr. 411). Again, Cole declined to undergo a laboratory workup for financial reasons. (Tr. 413). There is no indication in the record that Cole saw Dr. Van Wagnen again until February 2013, when it was noted that he recently had been diagnosed with diabetes. (Tr. 408). Later that month, Dr. Van Wagnen noted that Cole was compliant with medication and his symptoms were improving. (Tr. 405, 408). Thus, the ALJ's conclusion that Dr. Van Wagnen's opinion was inconsistent with his own treatment notes is supported by substantial evidence.

Likewise, the ALJ properly concluded that Dr. Van Wagnen's opinion was inconsistent with other medical evidence in the record and appeared to overstate Cole's limitations. For example, as the ALJ noted, Dr. Van Wagnen referred Cole to David Prough, M.D. for treatment of his hernia in March 2013.[2] (Tr. 19, 417). Dr. Prough noted that Cole had some tenderness and a pronounced diastasis in the upper abdomen, as well as recurrence along the edge of the previously-placed mesh. (Tr. 417). He recommended that Cole use an abdominal binder and stated that the hernia would likely require surgical repair at some point; because Cole was "really having minimal symptoms," however, Dr. Prough indicated that it was fine to "simply observe

---

[2] Previously, Cole had undergone two hernia repair surgeries, one in March 2010 and one in August 2010. (Tr. 294-95, 352-53).

10

for the time being." (*Id.*). In addition, although Cole underwent two cardiac catheterizations in 2008 and 2010 (Tr. 279, 289), the ALJ noted that he had not had any recent cardiac complaints and required only annual cardiac follow-up (Tr. 21).

With respect to Cole's carpal tunnel syndrome, the ALJ correctly noted that, although he had right carpal tunnel release surgery in February 2009 (Tr. 281-82), he had not received any treatment or therapy for this condition in several years (Tr. 21). Indeed, although Cole visited David Hing, M.D., a plastic surgeon, on several occasions during 2010 (Tr. 345-50), Dr. Hing advised against further surgery and instead recommended hand strengthening (Tr. 347). In May 2010, Dr. Hing observed improved strength in adduction of Cole's fingers, but that weakness remained in finger abduction; although he continued to believe that further observation was appropriate, he referred Cole to Dr. Stephen Haase for a second opinion. (Tr. 346). When Dr. Haase saw Cole in June 2010, he noted that Cole had 4/5 thenar muscle strength but significant weakness in the ulnar innervated muscles, good thumb adduction, and more weakness on the ulnar than the radial side of the hand. (Tr. 492). He did not find any significant Tinel's sign or signs of muscle wasting. (*Id.*). Dr. Haase concluded that Cole had incurred some ulnar nerve trauma during the carpal tunnel release surgery, but he did not recommend further surgery, advocating instead "watchful waiting." (*Id.*).

The ALJ also pointed out that, during a February 2012 consultative examination conducted by Matthew Byington, D.O., Cole had a positive Tinel's sign on the left hand, consistent with carpal tunnel syndrome. (Tr. 21, 396). However, Dr. Byington also found that Cole had full range of motion of all joints, full dexterity in his hands, 4/5 grip strength in the right hand and 5/5 in the left, intact sensation, and symmetrical reflexes. (Tr. 395-96). He noted that Cole's fourth and fifth digits on his right hand had pain with range of motion, but he still had

11

full range of motion. (Tr. 396). Dr. Byington further observed that Cole had an umbilical hernia, but his abdomen was non-tender with minimal distension and no masses. (Tr. 394-95). The ALJ also noted that Cole "reported he drives, does laundry, pays bills, reads, watches television, uses a computer, does light shopping, completes errands, and cooks simple meals…[He] cares for his own personal needs, makes his own medical and dental appointments, and visits with friends and family." (Tr. 21, 41, 54-56, 234-35).

For all of these reasons, the ALJ properly concluded that Dr. Van Wagnen's opinion was inconsistent with the medical evidence of record (including Dr. Byington's opinion and the treatment notes of Dr. Prough, Dr. Haase, and Dr. Hing) and appeared to overstate Cole's limitations, and his decision to discount this opinion is supported by substantial evidence. *See, e.g., Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175-76 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion.").

## 2. The ALJ's RFC Finding is Supported by Substantial Evidence

Cole next challenges the ALJ's RFC assessment. As set forth above, the ALJ determined that Cole had the RFC to perform light work – which involves lifting up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking six hours in an eight-hour day, and sitting the rest of the time, *see* 20 C.F.R. §404.1567(b) – with a number of additional limitations.[3] (Tr. 18).

---

[3] One Cole's arguments is that the ALJ should have found him more limited because he testified that he has "significant stomach pain with prolonged sitting," can only stand for 2-3 minutes at a time, cannot walk even one block, has very limited use of his right (dominant) hand, and suffers "severe diarrhea," which requires him to use the restroom frequently. (Doc. #10 at 18-19; Tr. 46, 50-52, 62). As explained *infra*, however, the ALJ reasonably found Cole's testimony not entirely credible and declined to include such limitations in his RFC assessment, which is

In his motion, Cole argues that the ALJ improperly found him capable of light work because, in his view, he is incapable of sedentary work. (Doc. #10 at 19-20). In support of this argument, Cole first cites *Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 282 (6th Cir. 1985), for the proposition that "a claimant cannot be considered capable of a wide range of light work activity unless the claimant can perform a wide range of both sedentary and light work." (*Id.* at 19). He then argues that he is incapable of sedentary work because such work "requires the ability to sit for extended periods and is precluded by an impairment which requires a claimant to alternate sitting and standing." (*Id.*). He also argues that his carpal tunnel syndrome renders him incapable of sedentary work because sedentary jobs "require more manual dexterity and speed than other jobs."[4] (*Id.* at 20 (citing *Faison v. Sec'y of HHS*, 679 F.2d 598, 599 (6th Cir. 1982)). These arguments are unavailing.

As the Commissioner persuasively argues, Cole's reliance on *Damron* is misplaced. In that case, the Sixth Circuit noted that the regulation defining light work states that "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Damron*, 778 F.2d at 282 (quoting 20 C.F.R. §404.1567(b)). But, even if an individual

---

entirely appropriate. *See, e.g., Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230 (6th Cir. 1993) (ALJ's RFC and subsequent hypothetical questions posed to VE need not include unsubstantiated complaints).

[4] In connection with this argument, Cole asserts that the ALJ determined "that [he] cannot 'handle or finger with the right hand[.]'" (Doc. #10 at 20). This is simply incorrect, as the ALJ found that he could perform both of these functions *occasionally*. (Tr. 18). Moreover, to the extent Cole cites the VE's testimony that he would be precluded from light work "if he only had minimal use of his dominant hand" (Doc. #10 at 20), such testimony is irrelevant where the ALJ's determination that he was not limited to this extent is supported by substantial evidence. *See Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'") (quoting *Casey*, 987 F.2d at 1235).

has these "additional limiting factors," there is nothing in either the regulation or *Damron* that implies that such an individual would also be necessarily unable to perform light work. Rather, the *Damron* court held only that, if such additional limitations are present, an ALJ may not rely exclusively on the Medical-Vocational Guidelines to find a claimant not disabled at Step Five but, instead, must rely on other evidence to determine whether jobs remain available that the claimant can perform. *See id*. Here, the ALJ did just that – questioning the VE to determine the effects of Cole's additional limitations and relying on the VE's testimony. Thus, Cole has failed to establish that the ALJ erred in formulating his RFC.

### 3. *The ALJ Adequately Evaluated Cole's Impairments in Combination*

Cole next argues that, although the ALJ listed his multiple severe impairments (including carpal tunnel syndrome, irritable bowel syndrome, coronary artery disease, diabetes, history of hernia, and hypertension), he "fell short in his analysis when he did not consider how those multiple impairments would act *together* to effect his ability to hold substantial gainful employment." (Doc. #10 at 21 (citing Tr. 16) (emphasis in original)).

It is true that the regulations make clear that an ALJ should "consider the combined effect of all [of a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §404.1523. However, the Sixth Circuit has made clear that there are no particular words an ALJ must use to demonstrate that he considered the claimant's impairments in combination; rather, it is generally sufficient for an ALJ to discuss all of the impairments and ensure they are accounted for both in the RFC and in the questions posed to the VE. *See, e.g., Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990). Here, the ALJ stated several times in his Step Three analysis that Cole's impairments (plural) did not meet or medically equal a listing, either alone or in combination. (Tr. 17-18). He discussed each of Cole's impairments throughout his RFC

analysis, assessed an RFC that included limitations relating to each of these impairments,[5] and conveyed all of these limitations to the VE. (Tr. 18-22, 70-75). Cole does not explain how a more explicit discussion of the combined effects of his impairments would have led to a finding of greater limitations, and this Court finds no error in the ALJ's analysis.

        4.       *The ALJ's Credibility Determination is Supported by Substantial Evidence*

Cole's last argument – that the ALJ erred in evaluating his credibility – is also without merit. Courts have recognized that determinations of credibility related to a claimant's subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). When a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must then consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of her symptoms are credible. *Soc. Sec. Rul. 96-7p*, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §404.1529(c).

In his motion, Cole asserts that, "Nowhere in the decision did the ALJ outline why [his] testimony concerning his constant abdominal pain, inability to use his dominant hand (due to

---

[5] For example, the ALJ imposed exertional and postural limitations to account for Cole's cardiovascular impairments and abdominal pain, manipulative limitations to account for his carpal tunnel syndrome, and ready access to restroom facilities to account for his irritable bowel syndrome. (Tr. 18-22).

severe carpal tunnel syndrome and pain) and his constant need to be near a bathroom are not consistent with the multiple physical examinations finding exactly that." (Doc. #10 at 23). In actuality, however, the ALJ did explain exactly how Cole's medical records – as well as other evidence in the record – belied his allegations of disabling pain and impairments. For example, the ALJ noted that, despite alleging severe abdominal pain with walking, standing, and sitting, Cole repeatedly denied further examination or workup for this pain, and in March 2013, Dr. Prough indicated that surgery was not immediately necessary, given that Cole was having minimal symptoms. (Tr. 19, 21, 412, 417, 427). The ALJ also noted that in contrast to Cole's complaints regarding his hand pain, he had not had any physical therapy or other treatment for his carpal tunnel syndrome in several years. (Tr. 21, 393). The ALJ noted that Cole had not had any recent cardiology complaints, and his hypertension and diabetes were controlled with medication. (Tr. 19, 21, 396, 405). Finally, in arguing that the ALJ failed to consider his claimed need to constantly be near a bathroom, Cole ignores that the ALJ specifically referenced this issue in his written decision (Tr. 20), and accounted for it in Cole's RFC by limiting him to jobs which have "ready access to the restroom facilities." (Tr. 18).

These reasons, taken together, provide ample support for the ALJ's credibility finding[6] and demonstrate that the ALJ's conclusion that Cole's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible is supported by substantial evidence.

---

[6] Cole also challenges the ALJ's finding that his activities of daily living are at odds with his allegations of a total inability to work. (Doc. #10 at 23 (citing Tr. 21)). In reaching this conclusion, the ALJ cited Cole's own testimony and reports that he drives, prepares meals, does laundry, pays bills, shops for groceries, and cares for his own personal needs. (Tr. 21). It was appropriate for the ALJ to consider the fact that Cole's daily activities are less limited than one would expect, given his allegations of disabling pain. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525 532 (6th Cir. 1997) (an ALJ may consider household and social activities in evaluating the credibility of the claimant's assertion of pain).

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Cole's Motion for Summary Judgment [10] be DENIED, and the ALJ's decision be AFFIRMED.


Dated: December 23, 2015                    s/David R. Grand
Ann Arbor, Michigan                       DAVID R. GRAND
                                                 United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 23, 2015.

s/William Barkholz for Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
